Thank you, Your Honor. May I begin, please? Surely. I'd like to reserve two minutes for rebuttal. Fine. I may decline it later on, but I reserve it. Good. I think we understand the facts here, and you've got some interesting legal arguments. I guess one of the first questions is, is there a true conflict? Well, whether there's a true conflict. But what is, what does the, what do the exclusions say? Would you have... The language, Your Honor? Yes. The language of the exclusion, Your Honor, is found in the reproduced record, page A-172. And that exclusion, you want me to literally read it into the record, Your Honor? No, no, no. We understand. But I just want to understand what your reading is, because it says, this insurance does not apply to bodily injury arising out of, etc., etc., the actual or threatened abuse or molestation by anyone of any person while in the care. What's your interpretation of that, by anyone? Well, my interpretation would be that any employee of the insured who committed an act of abuse or molestation, those acts would be excluded from coverage. Right. So why does the separation of insured provision matter? Because I believe... You're arguing separation of insured is really key here, and the district court failed to acknowledge it. But all it says is that the insurance applies separately to each insured. All right. Let's assume that's the case. So it applies separately. But if there is an exclusion that also excludes as to each of these four employees, then where does the separation of insured get you? I believe what the separation of insured provision means is that for each employee of the insured, the policy constitutes a separate policy. It's as if they have their own policy of insurance, separate and apart from each other. All right. But how does that get you anywhere in light of this very broad exclusion, which would exclude these acts as to each of these, wouldn't it? I believe, and maybe I misunderstand the court's question, I believe the policy of the separation of insured provides that for the specific acts of negligence committed by employee A, employee B, and down the line, those acts have insurance coverage regardless of what a co-employee did. I don't believe that the exclusion of coverage eliminates coverage in a commercial policy for the acts of fellow employees. Now, you have not, in your reply, addressed the alternative argument of the appellee, which is that the second part of the exclusion would negate coverage as to those three. And if not that, then the general exclusion that is referred to at A1029, which is the total exclusion for negligent health care. I guess my question is how, given the second prong of this exclusion and the general exclusion for negligent health care, how is there not an exclusion that would prevent coverage for the three others? I'll respond to your first point. The negligent employment and investigation, those provisions in fact do bar one of the counts in the underlying lawsuit, the personal injury lawsuit, which is the failure of Altera to have actually properly supervised Heidi Tenzer. I don't believe the negligent employment supervision, et cetera, has any effect with regard to the direct liability of the fellow employees. So in other words, this exclusion is saying, even if we acknowledge that there's no coverage for the acts of this one rogue employee, we also say that the employer can't be responsible for, or it's not covered for, their failure to supervise that employee. But that is not what my case is about exclusively or entirely. I've also sued the facility, I'm sorry, the employees, Pat Policino, Linda Murray, and Anne McClintock, for their acts of negligence. And it's those employees who have nothing to do with this negligent supervision or employment. With regard to your second question, if that provision is read, Your Honor, the entire policy is illusory. It's a health care facility. How could there not be coverage for its acts as a health care provider? Well, I guess I'll let your colleague address that, but it seems to me there could be HR issues, there could be lots of issues vis-a-vis employees that aren't necessarily health care. Do you not agree that the policy itself excludes bodily injury? I'm looking at A1029. None of these employees is insured for bodily injury arising out of his or her providing or failing to provide professional health care services. That's what, I mean, I'm just reading from the policy, and I think the district court relied on this. I'm sorry, Your Honor. A1029, section Roman numeral 2, sub 2, sub A1D. I didn't interpret the district court's decision to rely upon that provision to exclude the coverage, and perhaps I misread it. I believe, again, this is clearly a health care policy, and if you allow the exclusion to control the coverage, then the exception eats up the policy. The paragraph 2 on the exclusion specifically references negligent supervision, negligent employment, failure to report. So those claims are clearly excluded. Would you agree with that? Yes. All right. So you're basing your claim on the failure to provide adequate care or treatment upon learning of Mr. Neff's injuries? Absolutely. And he would have lived but for that. But I still don't understand why the general language in the exclusion, particularly the term by anyone, doesn't foreclose your argument even if we were to consider these matters as four separate insurance policies. Because the controlling law of the state of Massachusetts says, Your Honor, that that Supreme Court would not interpret that language, the any insured, to eliminate the separation of insured provision. But that court would do its best to harmonize those two provisions and say, yes, we recognize the word any is overrun by our interpretation, but we're going to give effect to the main manifest design of the policy and we're going to recognize there's coverage for those additional insured, those separated insured. Okay. Now, that gets us into the question of whether we have a true conflict here. And what is your position about Massachusetts law? That the Wooster decision, Wooster v. Marnell, is still the law of that state. And that Supreme Court very broadly established that its intention was to give effect to the main manifest design of the party as the language of the contract established. And there's been no decision since 1986, Your Honor, that I'm aware of, that changes that edict, that declaration from the Supreme Court of that state. How about the Hickman case? Does that affect your judgment at all? It does not, Your Honor, because the Hickman case dealt with a residential policy, a homeowner's policy. We're dealing here with a commercial policy, a policy where the insured paid $1.8 million for premiums. In a homeowner's policy, I think Your Honor would probably recognize that the premium per year is probably a great deal less than that. In fact, if Your Honor were to know... Pardon me, but don't they make specific reference to the Worchester case and distinguish it because they claim there it was turning on an allocation of risk between home and auto insurance, but they gave true meaning to the term of the exclusion for the molestation. I see that provision, that paragraph in the decision, Your Honor, and I don't agree with it. I don't believe that's what the Worchester court did. The Worchester court did address the fact that the homeowner's policy, there were no additional premium paid for auto case, but it was not an allocation of risk decision. It was at its essence, at its core, a case about the interpretation of an insurance contract to give effect to the intention of the party. So I do recognize in Hingham there is this reference to how that court thought that the results in Marnell, they call it Marnell, turned on allocation of risk. I think if you read the decision in Worchester, it doesn't turn on that allocation of risk at all. It talks about three issues. There is an economic analysis reference where they talk about no premiums being paid. There is a paragraph about main manifesto design, which is really what my case is about, give effect to the entire policy, not the exclusion, but the fact that there's a commercial policy designed to insure thousands of employees across 28 states in this country. Is it your position, though, that the Massachusetts law applies? Absolutely, Your Honor. Without a doubt. Without a doubt. There is no justification to apply the law of Wisconsin to this decision for the reasons that I discussed in the brief. And certainly the court could look at Pennsylvania and think, well, perhaps Pennsylvania law should apply. But if the laws in each of the states where these facilities are dispersed are used, and each time there is a dispute, you're not going to have uniformity of an outcome. There has to be one state that's chosen, and the ideal state to do that is Massachusetts. I see my time is up. I'm happy to answer more questions. If we adopt your position that there are four separate insurance policies here, does that change the choice of law analysis? That is, does that give greater weight to applying Pennsylvania law than Massachusetts law? I would say no, only because I still think you have to have uniformity. I still think you cannot have a situation where every different state, for instance, Florida, perfect example. These four individuals employed in Florida, if Florida state law were applied to this contract, would have coverage. I'm not sure how the employees of Altera who are living in Florida, working in Florida, should have more coverage on this policy than the employees in Pennsylvania. Well, that's our federal system. I recognize that. Insurance law is typically decided by state courts and state legislatures. Good. You have another minute if you want to finish up. A few more points. Sure. One of the issues that has been addressed by the insurance company is this notion that these other employees pled guilty to crimes that fall within the exclusion, and therefore, why go any further? But they pled guilty to neglect, not abuse or molestation, and they pled guilty based upon a mens rea of either intentional, knowing, or reckless. So what the insurance company has asked this court to do, at least implicitly, is to expand the language of that exclusion to make sure that it bars the acts of not only Ms. Tenzer, but her fellow employees, and I would submit that is an improper reading of that provision and an illegitimate expansion of the exclusion by this insurance company. All right. Good. Good. Thank you very much, Mr. Williams. Thank you, Your Honor. Mr. Sullivan. Good morning, Your Honor. Good morning. My name is John Sullivan, and I'm here on behalf of Liberty Surplus Insurance Corporation. Good. Pull the mic up a bit, please. That's good. Your Honor, our central point is that the policy language as written and as construed by courts in Massachusetts, Pennsylvania, and Wisconsin, the three states that are allegedly implicated in this situation, clearly and unambiguously excludes coverage. The key language in our policy is in both Paragraph 1, which was addressed in Mr. Leibovitz's brief, and also in Paragraph 2, which was ignored. In Paragraph 1, the exclusion says that there's no coverage for bodily injury arising out of abuse by anyone. It doesn't say just by the insured that's seeking coverage. By anyone of any person while in the care, custody, and control of any insured. But can't we read that to refer only to the actor who did the bodily injury? Your Honor, I don't believe that that would be a fair reading of the policy, and the reason for that is that there are provisions in the Liberty Surplus policy that use the language, the insured, and in those situations, that language refers to the insured that is seeking coverage. But this language specifically talks about an exclusion that applies if any insured, in fact, it doesn't even require any insured to have done it, if anyone is guilty of the abuse or molestation. Well, who did commit the abuse and molestation here? Just one of the actors, correct? Heidi Tenzer is the one that committed the abuse, correct. So we're not in Sub 1 anymore, are we? Abuse or molestation by anyone. Who of these four committed abuse or molestation? Only the one, correct? She's the one that committed the abuse, correct, Your Honor. So we're out of one, because she's the only one who committed the abuse or molestation. Your Honor, I would not agree with that because the way the exclusion reads is it applies, it says that the insurance does not apply if the abuse is committed by anyone. Once we get to that point, if the abuse is committed by Heidi Tenzer, it excludes coverage for anyone who qualifies as an insured under the policy that is seeking coverage. So you would say the injury arising out of the abuse or molestation by anyone means that as long as that injury qualifies, there's simply no coverage. Correct, Your Honor, because what I'm looking at and what this exclusion does is it eliminates a whole category of potentially covered claims. It says if we have an abuse or molestation situation, there's no coverage. The language uses the phrase by anyone. It doesn't even require that the abuse be committed by someone that qualifies as an insured. So under this language as written and as has been construed by courts all over the country, this language indicates that as long as anyone is guilty of the abuse, there's no coverage. So you would say that even if we do have a separation of insurance provision that is given effect, still reading the policy separately as to each of them, this is a disqualifier. Correct, because the separation of insurance provision, it says that each insured is treated separately under the coverage, under the policy, but it doesn't rewrite exclusions in the policy. It doesn't say that if an exclusion specifically says there's no coverage if anyone commits an abuse or molestation, that somehow we ignore the language of any insured, the language and specifically any meaning each and every one, not one specific insured. Of course, isn't there an issue as to what arising out of really means, how broadly? I mean, if these other individuals fail to take steps that could have ameliorated the condition and it could be said that death really was caused by the failure to treat rather than the original abuse, wouldn't you have an issue as to whether the total lack of reporting or failure to treat Mr. Neff was why he died as compared to the original abuse? My answer would be no for two reasons. One, I think that the arising out of language has been universally construed by both this court and courts throughout the country as meaning proximate causation, and in this situation, but for the abuse, Mr. Neff would not have died. We also get to the second part of this. There has to be foreseeability under proximate causation, but for is not necessarily proximate causation. Well, I guess, Your Honor, I would still look at this situation as to when the courts have interpreted this language. The key question here is if Heidi Tenzer had not abused this person, would we be here today? And the answer is no. Can I ask you a question? I mentioned to your colleague that on page A1029, and indeed in the district court's opinion at A9, there is reference and reliance to a very broad exclusion, bodily injury arising out of his or her providing or failing to provide professional health care services. Do you agree that is an exclusion here? It is, and I think Your Honor's question was would this essentially completely knock out the claim? Right. And my answer would be no. It would knock out the claim for a number of the parties here because what that provision does is addresses the question of when an employee qualifies as an insured under the policy. So it would knock out the coverage for the various employees. Oh, as an insured? Exactly. So the employees couldn't seek? Correct. Oh, right. It would not knock out coverage for Altera itself, the named insured under the policy. So the district court was wrong in relying on that? I think that the district court relied on that point, but then it also specifically relied on the second part of the exclusion. Tell us about Part 2. Part 2 of the exclusion is designed to make it clear that the exclusion applies not only to injury arising out of abuse, but is also designed to address the situation in which clients' attorneys will look for different theories in which to avoid the situation in which the focus was simply on the abuse. It deals with a whole category of claims, including the negligent employment of the abuser, which was a claim here, negligent investigation and supervision. The claim here was that Mr. Neff's injuries were apparent and no one did anything about them, failure to report the injuries. There are allegations in the complaint that different employees recognized that Mr. Neff had been injured, did nothing about it, didn't report it to either authorities or to physicians. They're explicitly knocked out, but there's one that probably is not knocked out, and that is the failure to provide adequate care or treatment upon learning of Mr. Neff's injuries. That's not specifically referenced in Part 2. That is not specifically referenced in here, although I would look at the failure to report the claim or report the incident as falling within that category. But failure to provide adequate care could be different from failure to report. They obviously are related, but it seems to me it's a different category. They are related, but even under that situation, I still think even if you're looking at a claim that is based on failure to provide adequate care after the abuse, it still arises out of the abuse. You still have... You're back to Part 1, then? Exactly. All right. Are you going to talk about Massachusetts law? I can, Your Honor. Are you kindly going to talk about that? We did reserve the time, so I will be speaking for 12 minutes. Okay. Your Honor, in connection with the issue of whether Massachusetts law applies, I think there are two answers to it. One, there's no true conflict here because this exact language that's at issue here has previously been addressed in both Pennsylvania or Pennsylvania, Wisconsin, and Massachusetts. All those courts have ruled that the exclusion applies not only to the abuser but also to claims that are based on negligent supervision and so forth. Even assuming that the court found that there was a true conflict, if we look at the Hammersmith case, which was not addressed in the Neff brief, the Hammersmith case goes through the various contacts that are to be considered in determining the applicable choice of law. All of those contacts point toward Wisconsin laws applying. Wisconsin is the place where the contract was made. Wisconsin is the place where the contract was negotiated. It's the place of performance, and that's where the payment for the premiums would have come from. There are two other categories that are mentioned. One is the location of the subject matter, which would not be a factor here because the subject matter of this policy would be risk scattered throughout the country and therefore would not be a factor under Section 193 of the restatement. The fifth category is place of domicile. The only contact with Massachusetts here is that Liberty Surplus happens to have its principal place of business in Massachusetts, but that factor is considered a non-factor unless it is combined with some of the other factors set forth in Section 188 of the restatement, and specifically factors such as the place of the contract, performance, and negotiation. All of those factors point to Wisconsin. The second part of the analysis under Hammersmith is to consider the interest of the parties or interest of the potentially implicated states. Wisconsin has a clear interest in regulating policies that are issued in Wisconsin, negotiated in Wisconsin through Wisconsin brokers, and delivered in Wisconsin, and particularly in this situation where the insured was only able to get coverage through the surplus market because of its general uninsurability because it was in a category of nursing homes. Your Honor, I see that my time is up, and I am happy to answer more questions if that would be helpful. Any other questions? Good. Thank you very much, Mr. Solomon. Thank you, Your Honor. Mr. McKinnon. Yes, good morning. John McKinnon on behalf of American Empire Surplus Lines Insurance Company. Our policy follows the form of the Liberty Surplus policy, and our arguments follow the same. One thing I just wanted to point out is... Don't stray too far from the microphone, because we listen to the tapes of these arguments. As Mr. Solomon pointed out, the courts in Wisconsin, Pennsylvania, and Massachusetts have all ruled in favor of the exclusion, applying in addition to other courts throughout the country. I just wanted to bring to the attention to the court a recent decision out of the Supreme Court of New Hampshire, which addressed a similar sexual molestation exclusion, which did not have the Part 2 that's found in the Liberty Surplus policy, and found that the negligence claims were excluded by way of the arising out of language. And that's the Philbrick v. Liberty Mutual decision, 934A2, 582, from October of 2007. Assuming we decided that Massachusetts law should apply, why does Massachusetts law help you? Well, as Judge Rodriguez pointed out, the Higgum decision, I think, cleared, distinguished, and explained the holding in Worcester, and was very clear by stating that the Worcester decision would apply only in situations where it's an auto and homeowners policy in conflict. We don't have that here. Worcester certainly found the exclusion applicable, and I believe that that is the correct state of the law in Massachusetts. Any other questions? Good. Thank you very much, Mr. McKenna. Mr. Levowitz. Thank you, Your Honors. I'll be very brief. In response to Mr. Sullivan's argument, I want to point out that, in fact, both counsel argued that there's unanimity across all three states, Wisconsin, Pennsylvania, and Massachusetts, about the exclusion, the abuse of molestation. That's true. But they can't give you one decision from each state that reconciles, that compares, combines the separation of insured provision and the exclusion. That they can't do, and that's the key issue here. And the second point I wanted to address is that Mr. Sullivan argued all the reasons why there are some preliminary contacts between Wisconsin and the insurance contract. The solicitation for the bid came out of Wisconsin. The broker was in Wisconsin. But once you get past those original initial contacts, everything else happened out of Wisconsin. And I won't go through the details right now, but I'll refer you to page 33 of the appellate's brief, which cites extensively from the record, the evidence before the court, as to all those contacts. The payments took place in Massachusetts. The delivery of the contract, which I'm not sure it ever occurred, was in New York. And most significantly, and this isn't to tell you that Liberty Mutual was running a rogue insurance company. They just failed to recognize that the Wisconsin statute only allowed them to insure risks in that state. But they're not trying to acknowledge that issue now. They'll just tell you they're an upstanding insurance company, that they did nothing wrong. But they did do something wrong, and they should not be allowed to ask for the coverage and protection of Wisconsin law when they violated the law itself. Counselor, Mr. McKenna cites in his brief a case called Braxis. The argument that is made primarily by Mr. Sullivan is that under number one, exclusion, because it's an injury arising out of abuse or molestation by anyone. And he says injury arising out of should be read broadly. Now, the Braxis case that Mr. McKenna cites to us says that under Massachusetts law, the term arising out of indicates a wider range of causation. And it's generally understood to mean originating from, growing out of, flowing from, incident to, or having connection with. I don't dispute that. Do you have a case, and this is Massachusetts law, so if we cite Massachusetts law, maybe have it on the one hand, but maybe we don't get there because of the Braxis case. Do you have any authority that would support our giving a very narrow reading to the concept of arising out of? I don't dispute that point. But Braxis was not a case that dealt with a separation of insureds argument as we have here. I can see that point in my brief. I can see it now in front of your honors. But if the exclusion prevents coverage for an injury arising out of abuse or molestation by anyone, and if you read that into each one of these policies for each of these insureds, doesn't it foreclose coverage as to all of them? I believe if you're looking at it as four separate policies I proposed earlier, the inquiry should be, did this insured herself commit an act which triggers the exclusion? But if the exclusion is that there's no coverage, let's assume it's the second employee, I don't know what the name is, there's no coverage in that policy. If the injury plaintiff, the plaintiff's injury has arisen out of abuse or molestation by anyone, and we read arisen out of broadly, doesn't that preclude coverage under Paragraph 1 as to all? I think your honors' initial question to Mr. Sullivan was the proper analysis, which is that when you look at the sequence of events and you see what the causative effect was for Mr. Neff, the instinct or the compulsion to perhaps read it that broadly goes away. I understand your question, and arguably you could read that phrase to be as broad as possible. Well, that's what I'm just saying Massachusetts law appears to do. But I think the law is not that. And I think that the court in Worcester was very clear in what it thought the imperative was, which was to find a way to read all the provisions in harmony and not allow an exclusion to obliterate what the policy was supposed to cover, the main manifest design of the policy. So there is no decision from that state that addresses your honors' question. But there is instructive explanations in Worcester that I think gives your honor the answer. And the answer would be to find insurance coverage for these other insurers beyond Heidi Tinzer. Earlier, when we asked the question about the Sigmund case, there they were really discussing and making a distinction between the situation they had and the Worcester case. Do you agree that that difference or that attempt to describe what the underlying case meant is at all controlling here? I do not. And I don't want to repeat myself because I don't want to do that to your honor. But the court in Kingdom will, I believe, rely upon a different interpretation that it gave earlier, a different case that it relied upon earlier, where it talked about allocation of risks. And that's not what Worcester did. They did, in fact, make reference in passing to the fact that there was no paid premium by the homeowners for auto coverage. But it wasn't about economic analysis. And even if the court were to go in that direction and say, right now we're going to predicate our decision upon economic analysis, all you have to do, I respectfully submit, is look at the premiums paid here and compare it to what intuitively you know the premiums would have been in a policy for homeowners or auto. In fact, you don't even have to think about what you say intuitively. If you look at Exhibit A-305, which was the face sheet, the deck sheet for the insurance coverage for Linda Murray, for the same amount of insurance coverage she paid a premium of $89. That's the difference between an individual slash residential policy and a commercial policy, which these insurers provided to Altera in this case. So if you're going to go with an economic analysis, you have to look at the premium to understand what risk that they agreed to shoulder here. Anything further? Mr. Levitz, thank you very, very much. The case was very well argued. We will take the matter under advisement. United States v. Kelly.